IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANICE W. COATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:17-00094-KD-M |
| | ) | |
| CITY OF JACKSON, INC.[1] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Janice Coates is an African American woman who works for the City of Jackson, Alabama ("Jackson") as a Radio Control Officer, or "RCO." (Doc. 28 at 1). Jackson hired her in January 2002. (Doc. 29-1 at 3). She sued Jackson 15 years later, alleging race discrimination, age discrimination, and retaliation. (See Doc. 1).

Jackson's motion sought summary judgment "as to all claims being asserted against it." (Doc. 28). The Court granted Coates' motion to file an untimely response (Doc. 34) and afforded Jackson a week to submit any reply. Jackson thereafter replied. (Doc. 35). As explained *infra*, Jackson's motion will be granted.

I.  Conclusions of Law

   a. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---
[1] The City of Jackson is incorporated in that its status is a city. It is not, however, incorporated as a business, and therefore need not be referenced as "City of Jackson, Inc."

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

Jackson, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr

GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 255) (internal quotation marks and citations omitted).[2]

### b. Employment Discrimination Burden-Shifting Framework

Title VII bars covered employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . . ." 42 U.S.C.A. § 2000e-2. Employers are likewise prohibited from "discriminat[ing] against any of [its] employees or applicants for employment . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The test for intentional discrimination in suits under § 1981 is the same as that used in Title VII discriminatory treatment cases." Shumate v. Selma City Bd. of Educ., 928 F.Supp.2d 1302, 1318 (S.D. Ala. 2013).

Absent direct evidence of discrimination, a plaintiff may establish the McDonnell Douglas prima facie case of discrimination by showing: (1) she belonged to a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff was subjected to adverse employment action; and (4) similarly situated non-members received more favorable treatment. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). To demonstrate a prima facie case for retaliation, the plaintiff must establish: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

Once a plaintiff establishes a prima facie case, the burden of production (not persuasion) shifts to the employer to articulate a legitimate, non-discriminatory justification for the promotion decision. Holmes v. Alabama Bd. of Pardons & Paroles, 591 F. App'x 737, 742 (11th Cir. 2014)

---
[2] Coates incorrectly cites Alabama law for the summary judgment standard. (Doc. 32 at 7-8).

3

(citing Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 (11th Cir. 2013)). If the employer provides a legitimate, non-discriminatory reason for the promotion decision, the burden then shifts back to the plaintiff to produce evidence that the proffered reason was pretextual. Holmes, 591 F. App'x at 742. "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007).

In order to successfully demonstrate pretext, the plaintiff must show "that the reason was false, and that discrimination was the real reason." Matthews v. City of Mobile, 2016 WL 1736061, at *11 (S.D. Ala. May 2, 2016), aff'd sub nom. Matthews v. City of Mobile, Alabama, 2017 WL 3500052 (11th Cir. Aug. 16, 2017). Mere contradiction of the legitimate, nondiscriminatory reasons alone does not create or support an inference of discriminatory action. Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1339 (11th Cir. 2015), cert. denied sub nom. Flowers v. Troup Cty., Georgia, Sch. Dist., 136 S. Ct. 2510 (2016). "A plaintiff can [show pretext] directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Paschal v. United Parcel Serv., 573 F. App'x 823, 825 (11th Cir. 2014) (quoting Alvarez, 610 F.3d at 1265)).

## II. Findings of Fact

Coates is an African American woman who began working for Jackson in January 2002 as an RCO. (Doc. 29-1 (Coates Depo.) at 3). At various times throughout Coates' tenure, Stephanie McIntosh, an African American, supervised her. (Doc. 29-1 at 4). Jackson currently employs four RCOs, including Coates. (Doc. 29-1 at 5).

Coates filed an Equal Employment Opportunity Commission Charge of Discrimination on May 18, 2016. (Doc. 29-4). In her charge of discrimination, Coates alleged Jackson discriminated against her on the basis of her race. (Doc. 29-4). The EEOC investigated and was unable to conclude Coates' information established violations of the statute. Therefore, the EEOC closed its file and issued a right to sue notice. (Doc. 29-5).

Coates' complaint includes three counts.[3] Count I alleges race discrimination under 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964. She also alleges her employer's action violated the Constitution of Alabama. (Doc. 1 at ¶ 12).

Count II is brought pursuant to the Age Discrimination in Employment Act and the Alabama Age Discrimination in Employment Act. Coates' alleges that Jackson, through its agent Stephanie McIntosh, failed to give Coates a raise (save for a cost of living adjustment). She further alleges Jackson denied her educational opportunities that it afforded Caucasian workers.[4] Finally, she alleges Jackson deprived her of compensation younger employees received by denying her placement on the "on-call" schedule. (Doc. 1 at ¶ 20).

Count III is a retaliation claim. Coates alleges that in February 2016, her supervisor "caused Plaintiff to be evaluated lower than other similarly situated white employees, namely, Tanya Horton. Specifically, Lem Dubose,[5] the acting chief of police after Charles Burge retired recommended Plaintiff for a special assignment in the breakroom, and McIntosh refused the recommendation altogether rather than allow Plaintiff to complete the special assignment." (Doc. 1 at ¶ 25). The allegation also includes deprival of Coates' coffee creamer of choice, while allowing other employees to select their preferred coffee creamer. (Doc. 1 at ¶ 26). Coates

---

[3] Coates filed a "shotgun pleading," which is improper. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (stating the Eleventh Circuit has "condemned" shotgun pleadings since 1991).
[4] Coates includes Caucasian comparators in Count II (ADEA/AADEA) instead of younger employees not within her protected age class.
[5] Lem Dubose is no known relation to the undersigned.

contends that she was denied additional on-call time and was given a negative evaluation due to her EEOC charge of discrimination. (Doc. 1 at ¶ 28).

## III. Analysis

### a. Discrimination Based on Race

Coates alleges she was subject to unlawful race discrimination. Coates properly exhausted her administrative remedies by filing an EEOC charge of discrimination in May 2016. In that charge, Coates alleged deprival of overtime hours, receiving negative evaluations, and "different terms and conditions of employment because of race." (Doc. 29-4 at 1). Coates' race discrimination allegations can be divided into three general categories. Specifically, (1) she was evaluated lower than a Caucasian colleague; (2) she was denied training; and (3) she received less income than Caucasian colleagues.

#### i. 2015 Evaluation

Tonya Horton, who is Caucasian and Coates' fellow RCO, received 48 assigned value points in her 2015 evaluation, (Doc. 32-3 at 17) while Coates received 40 assigned value points in her evaluation. (Doc. 32-3 at 11). An examinee could receive a total of 105 points if she received a "5" (which corresponded with "Exceeds Expectations") for all categories. Both Horton and Coates received 2 points (which corresponded with "Satisfactory") for most categories delineated in the evaluations. However, Coates received a zero (which corresponded with "Unsatisfactory") for the dependability category. (Doc. 32-2 at 11).

Jackson contends Coates has not proven a prima facie case. Jackson first argues the evaluation did not result in Coates' receiving less pay, exempt her from future merit raises, or risk a demotion. It therefore contends the eight-point difference is not an adverse employment action

because no tangible consequence resulted from the memo. Second, Jackson argues Coates cannot demonstrate the comparator, Horton, received more favorable treatment.

While certain performance evaluations undoubtedly constitute adverse employment actions, to do so the evaluation must present a serious or material change in the terms of employment. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) ("We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."). Here, Coates has not adduced evidence that the relatively small difference (approximately 7.5%) between Coates' assigned point value and her Caucasian colleague's assigned point value triggers any tangible form of adverse employment action, either immediate or future. As a result, Coates has failed to meet this element of her prima facie case.

### ii. Denial of Training Opportunities

Coates alleges she received less training because she is African American. Jackson responds that this too does not constitute an adverse employment action because there is no evidence her lack of participation resulted in any tangible harm. Because Coates has not produced evidence that this denial did not cause serious or material harm, she failed to satisfy her prima facie case with respect to denial of training opportunities. McGuire v. Miami-Dade Cty., 418 F. Supp. 2d 1354, 1360 (S.D. Fla. 2006) (finding no adverse employment action where plaintiff did not introduce evidence that lack of training opportunities caused tangible harm). Denial of training opportunities that potentially will result in fewer hours or lack of promotion, bonus, or other material benefit may well constitute an adverse employment action. Cf. Madiedo v. Miami-Dade Cty., No. 99-1422-CIV, 2000 WL 1763845, at *4 (S.D. Fla. June 1, 2000), aff'd, 252 F.3d 1361

7

(11th Cir. 2001) ("Generally, denial of training that does not cause the denial of a promotion, bonus, or other benefit does not constitute adverse employment action."). Where, as here, the plaintiff's denial of training opportunities "would [not] affect [her] salary, chances of promotion, ability to perform [her] job, etc.[,]" she cannot show such denial constitutes an adverse employment action. Bullock v. Widnall, 953 F.Supp. 1461, 1473 (M.D. Ala. 1996), aff'd, 149 F.3d 1196 (11th Cir. 1998). Therefore, Coates does not satisfy her prima facie case for racial discrimination as to denial of training opportunities.

### iii. Compensation

Coates cites her total income as racially discriminatory. Although she points to her income broadly, several subcategories can be identified: (1) Coates' starting salary was $7 hourly while Horton, who started a decade later, initially earned $10; (2) Coates alleges she has not received a merit raise; (3) Coates alleges that Jackson has prevented her from earning additional overtime. (Doc. 1 at ¶ 7, 8, & 10).

Taking the three subcategories in reverse order, Jackson provides a legitimate, nondiscriminatory reason for the overtime disparity: Coates is hard to reach. In an affidavit, Stephanie McIntosh, the administrative assistant for Jackson Police Department and RCO supervisor, swore that (1) opportunity for overtime is governed in large part by an RCO's schedule, since an RCO must be off in order to work a shift to receive overtime; (2) Coates does not have a landline, and she does not always respond to text messages in time to agree to work the overtime shift; (3) occasionally, Coates will decline overtime; and (4) Horton "has proven herself to be adept at administrative duties . . . causing her to earn additional overtime hours." (Doc. 29-2 at ¶ 10-11). These legitimate, non-discriminatory reasons shift the burden back to Coates to rebut these reasons.

On this score, Coates has fallen far short. She does not argue any of Jackson's reasons are false, nor does she argue the reasons amount to pretext for discrimination.

Coates also argues she has not received a merit raise despite her numerous accolades. In her deposition, Coates testified that she asked acting chief of police Lem Dubose for a raise in 2016. (Doc. 29-1 at 25). In 2015, the Police Department increased all RCO's minimum hourly wage to $12. (Doc. 29-3 at 2). After the adjustment was implemented, Coates earned $1.25 more hourly than Horton. To this point, Jackson has never cut Coates' wage throughout her tenure. In fact, "each year since 2002, Coates has received an annual cost of living [adjustment]. She received additional raises in 2015 and 2017." (Doc. 29-3 (Powell Aff.) at 2). Coates currently receives $17.94 hourly; Horton receives $15.83 hourly and has approximately a decade less experience. (Doc. 29-3 at ¶ 7). Coates does not put forth evidence otherwise. Evidence is also lacking that a non-protected member received more favorable treatment than Coates. Coates did not submit evidence that Horton received a merit raise. Jackson submitted evidence that Horton has never received a merit raise.[6]

Finally, Coates' takes aim at Horton's starting salary. (See Doc. 1 at ¶ 7 ("Horton came in making about (1.00) one dollar less than Plaintiff [currently makes.]")). Coates began working for Jackson in 2002. She received $7 hourly. Horton began in 2012, a decade after Coates, and she received $10 hourly. Coates cannot show her rate of pay amounted to an adverse employment action because the decade interval between her and Horton's starting date render Horton an improper comparator.[7]

---

[6] Jackson's Clerk stated in an affidavit that Horton has received no additional raises outside the cost of living adjustment. (Doc. 29-3 at 2). Although Coates says Horton received a performance pay increase, she has submitted no evidence to support that claim and cited to her complaint as basis of that statement. (Doc. 32 at 7).
[7] In fact, Jackson would have been legally barred from paying Horton same starting wage rate as Coates because the federal minimum wage increased to $7.25 in 2009. Horton began in 2012.

9

For all these reasons, Jackson's motion with respect to Count I (race discrimination) is **GRANTED**.

b. **Discrimination Based on Age**

i. **Coates Did Not Administratively Exhaust her ADEA Claim.**

The Age Discrimination in Employment Act makes it unlawful for an employer to discriminate against an employee based on her age. 29 U.S.C. § 623(a)(1). "In order to litigate a claim for discrimination under . . . the ADEA a plaintiff must first exhaust [her] administrative remedies, beginning with the filing of a charge of discrimination with the EEOC." Rizo v. Alabama Dep't of Human Res., 228 F. App'x 832, 835 (11th Cir. 2007). 29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."). This provides the EEOC the first opportunity to investigate the allegation and endeavor to obtain "voluntary compliance and promot[e] conciliation efforts." Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279 (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)). Therefore, "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" limits the employee's judicial complaint, and plaintiffs need not file additional EEOC charges for retaliation claims that grow out of previous claims. Id. at 1280 (11th Cir. 2004) (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)).

As a general matter, the plaintiff must include administrative prerequisites (i.e., documentation of a timely-filed EEOC charge) in her initial complaint. "If the defendant denies that the plaintiff had met those requirements, the burden of proof is on the plaintiff to prove that he has." Rizo, 228 F. App'x at 836.

In Coates' May 23, 2016 EEOC Charge of Discrimination, she checked race as the basis for her discrimination. (Doc. 29-4). She did not select age. (Id.). Jackson argues that Coates did not mention age in her May 23 EEOC charge and that she failed to supplement the charge or file anew later with allegations of age discrimination. As a result, Jackson argues "[Coates'] failure to timely file a charge . . . entitle[s] the Defendant to summary judgment . . . ." (Doc. 28 (Def. Mtn.) at 5)).

In response, Coates' does not even address, much less dispute, Jackson's argument that she did not administratively exhaust her ADEA claim. (See Doc. 32 (Plaintiff Resp.) at 9-10)). Instead, Coates ignores the administrative discussion and proceeds to address the complaint's merits.[8] She argues that a complaint need only comply with FED. R. CIV. P. 8(a)(2) which requires a short and plain statement in a pleading. (Doc. 32 at 10). Coates contends Jackson's motivations are in factual dispute, without identifying which facts. (Doc. 32 at 10).

Because Coates failed to administratively exhaust her ADEA claim, Jackson's motion with respect to Coates' ADEA claim is **GRANTED**.

### ii. Coates Failed to Establish a Prima Facie Case Under the Alabama ADEA.

ADEA principles also govern AADEA claims. See Bonham v. Regions Mortg., Inc., 129 F.Supp.2d 1315, 1321 (M.D. Ala. 2001) ("And, because it is self-evident that the AADEA's purpose and prohibition are like the ADEA's . . . it follows that these principles should govern in AADEA cases as well."). Coates must establish a prima facie case of age discrimination by

---

[8] Coates' complaint (Doc. 1) identifies the following statutes on which Coates' bases her ADEA action: "This action is brought pursuant to 42 USC § 2000e; Title VII of Civil Rights act and USC §§1981, 1983, 1985; Code of Alabama 975, § 25-1-21 et. Seq. Discrimination in Employment Act (ADEA)." At least two errors exist. First, it fails to identify the proper statute for the ADEA (29 U.S.C. § 623(a)(1)). Second, many circuit courts have held the ADEA, as an independent statutory framework, forecloses upon § 1983 claims based on rights the ADEA created. The Eleventh Circuit has held the remedial framework of the Americans with Disabilities Act forecloses a § 1983 claim based on rights created by the ADA. "The Eleventh Circuit has not opined whether the ADEA similarly forecloses a section 1983 claim based on rights created by the ADEA, but several other Circuit and District Courts have answered this question in the affirmative." McNa v. Commc'ns Inter-Local Agency, 551 F.Supp.2d 1343, 1348 (M.D. Fla. 2008).

showing: (1) she was a member of the protected age group (between 40-70); 2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and 4) she was treated less favorably than other similarly situated employees who did not belong to her protected class. Hogue v. Sec'y, US Dep't of the Army, 718 F. App'x 877, 879 (11th Cir. 2017); Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

Jackson argues Coates failed to demonstrate a prima facie case because she cannot show she was subject to any adverse employment action. (Doc. 28 at 17). Any difference in hourly pay Coates received when she started versus new employees, Jackson argues, is a result in the passage of time and the increase in minimum pay per Jackson policy. (Doc. 29 at 17 (citing Doc. 29-3 at 3)). Coates does not respond to this argument. Coates identified two individuals in her complaint as comparators: Tonya Horton and Caitlyn Kennedy. Horton is older than the plaintiff, and therefore belongs to her protected class. (Doc. 29-1 at 23). Kennedy is in her twenties. (Doc. 28 at 17). However, Coates failed to demonstrate she suffered any adverse employment action or that she was treated less favorably than Kennedy. Moreover, assuming Coates could demonstrate a prima facie case for age discrimination, she does not respond to – much less establish as pretext – Jackson's proffered reason that the difference in starting pay was the result of passage of time and an increase in Jackson's starting hourly wage.

Jackson's motion with respect to Coates' age discrimination claims is **GRANTED** because Coates failed to exhaust her ADEA claim and she cannot establish a prima facie case with respect to her AADEA claim.[9] Even assuming Coates could establish a prima facie AADEA claim, the

---

[9] The AADEA does not require exhaustion of administrative remedies. Perry v. Batesville Casket Co., 551 F. App'x 987, 989 (11th Cir. 2014) ("The remedies, defenses, and statutes of limitations [of the AADEA] are the same as those authorized by the ADEA, with the only noted exception being that plaintiffs are not required to pursue an administrative remedy before filing suit.").

result would remain unchanged because Coates does not demonstrate Jackson's legitimate, nondiscriminatory reasons are pretextual.

### c. Retaliation

Coates' complaint includes five allegations of retaliatory conduct. First, Coates alleges that at some point in February 2016, her supervisor "caused Plaintiff to be evaluated lower than other similarly situated white employees . . . ." (Doc. 1 at 28). Second, Coates alleges McIntosh denied her a special assignment for which the acting police chief recommended her. (Doc. 1 at ¶ 25). Third, Coates alleges her supervisor retaliated against her by "order[ing] the coffee vendor to cease from delivering of the caramel vanilla coffee for no valid reason other than to retaliate against Plaintiff for filing an E.E.O.C. complaint or charge."[10] Fourth, she alleges that her supervisor denied Coates additional overtime hours afforded Caucasian employees. Fifth, Coates alleges Jackson knew her supervisor conducted herself in a bullying or otherwise intimidating manner toward her and that Jackson failed to remedy such behavior. (Doc. 1 at ¶ 29). According to Coates, these actions took place for "no valid reason other than to retaliate against [her] for filing an E.E.O.C. complaint or charge." (Doc. 1 at ¶ 26).

Employers are prohibited from "discriminat[ing] against any of [its] employees or applicants for employment . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To demonstrate a prima facie case for retaliation, Coates must establish: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. <u>Brown</u>, 597 F.3d at 1181. Although Title VII retaliation

---

[10] Coates disputes allegations of her own complaint in an affidavit supplied in her Response. (Doc. 32) ("Correction it was Coffeemate creamer, not Coffee that was discontinued by [my supervisor].").

claims must also be exhausted (and Coates did not include retaliation on her single EEOC charge of discrimination) "plaintiffs need not file additional EEOC charges for retaliation claims that grow out of previous claims." Gregory, 355 F.3d at 1280 (quoting Alexander, 207 F.3d at 1332). "[I]t is settled law that 'it is unnecessary for a plaintiff to file a subsequent EEOC charge before raising in federal court a retaliation claim growing out of an earlier charge.'" Lewis v. Eufaula City Bd. of Educ., 922 F.Supp.2d 1291, 1306 (M.D. Ala. 2012) (quoting Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988)) (internal brackets omitted). Because Coates previously filed an EEOC complaint, and her allegations include that she was retaliated against for filing an EEOC charge, Coates need not have filed another charge in order to litigate her retaliation claim in court.

For an employer's action to be motivated by retaliation, the employee must file a charge or oppose any action made unlawful under Title VII prior to the alleged retaliatory conduct. Here, Coates neither filed an EEOC charge of discrimination nor opposed any action made unlawful under Title VII before she received a lower evaluation and before she was denied a recommended special reassignment. Coates filed her EEOC charge on May 23, 2016. Her most recent evaluation was conducted in late 2015. (Doc. 29-2). Therefore, a lower evaluation could not have resulted from participation in a protected activity. And Coates alleged her supervisor did not act upon a recommendation for her to be given a special assignment in February 2016. (Doc. 1 at ¶ 25). Even assuming these two actions constitute adverse employment actions, because neither event occurred after Coates engaged in an activity for which a retaliation claim may be brought, neither can be considered retaliation under the statute.

That leaves three remaining instances of alleged retaliation: (1) denial of overtime hours; (2) denial of preferred coffee creamer; and (3) retaliatory hostile work environment. In addition to

the requirement that the employee must have acted in order to bring herself under the statutory protection of the retaliation statute, the employer's action must be adverse. Following the Supreme Court's holding in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the Eleventh Circuit expanded what constitutes actionable employer conduct. Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008). A plaintiff need not show an employer's action "adversely affects the plaintiff's conditions of employment or employment status[,]" id., but instead must show it is materially adverse to the plaintiff. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 548 U.S. at 68)). "Petty" or "trivial" issues, however, are not considered materially adverse, and therefore not actionable conduct. Id. at 973 n.3. Denial of one's preferred coffee creamer is petty and trivial, and therefore not actionable.

The two remaining allegations of retaliation are unquestionably adverse employment actions that apparently did occur after Coates filed an EEOC charge.[11] The first is that Jackson allegedly denied Coates additional on-call duty. The second is that Jackson allegedly allowed a hostile work environment.[12] To satisfy her prima facie case, Coates must also demonstrate a causal connection. As to denial of on-call duty time, Coates alleges that similarly situated Caucasian employees received additional on call duty scheduling.[13] Jackson acknowledges denial of overtime constitutes an adverse employment action. It also acknowledges that filing an EEOC charge brings one within the gambit of Title VII retaliation protection. But it maintains Coates cannot establish a prima facie case under the first requirement (i.e., engagement in protected activity).

---

[11] In 2012, the Eleventh Circuit joined every other circuit in the country in "recogniz[ing] a cause of action for retaliatory hostile work environment." Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam).
[12] Coates included allegations of hostile work environment under Count III (retaliation). (Doc. 1 at ¶ 29).
[13] Moreover, she argues she was denied training. (Doc. 1 at 27).

Jackson argues that summary judgment should be granted as to the claims of retaliation. Specifically, Jackson argues that since "Coates cannot show an objectively reasonable perception that she was opposing an unlawful employment practice[,]" (Doc. 28 at 21) she does not meet the requirements for the participation clause. For this proposition, Jackson relies upon Little v. United Techs., Carrier Transicold Div., 103 F.3d 956 (11th Cir. 1997). In Little, the question was whether opposition to a single offensive or derogatory remark uttered by a co-worker was actionable under Title VII. Id. at 958. The Court required not only that the employee oppose what he subjectively believed to be unlawful employment practices but also that the belief was objectively reasonable. Id. at 960.

The Eleventh Circuit has not determined whether the objectively reasonable requirement applies to the participation clause. Calhoun v. EPS Corp., 36 F.Supp.3d 1344, 1360 (N.D. Ga. 2014) (stating that while the Eleventh Circuit has yet to squarely address this issue, the district courts within the Eleventh Circuit have followed other circuit courts' lead in "declin[ing] to apply a reasonable, good-faith belief requirement to retaliation claims brought under the participation clause."). But even if the Court assumes it does not, Coates has failed to meet her burden of establishing a prima facie case by failing to respond to the argument that summary judgment is due to be granted on her claim of retaliation.

Moreover, assuming that Coates can establish a prima facie case as to her claim of receiving fewer overtime hours in retaliation, Coates has failed, for reasons stated *supra*, to rebut Jackson's legitimate, nondiscriminatory reasons for why she has accrued less overtime hours compared to other workers outside her protected class.

Finally, Coates alleges Jackson created a hostile work environment after she filed her EEOC charge. Specifically, she contends Jackson did not quell or constrict the "conduct of its

supervisor, McIntosh, and failed to take steps to correct said conduct. Thus, the Defendant's acts of omission created a hostile work place environment for Plaintiff, and subjected Plaintiff to 'bullying' in violation of the city of Jackson's Anti-Bullying Policy." (Doc. 1 at ¶ 29). A plaintiff alleging a retaliatory hostile-work-environment claim "must show that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he has been subject to unwelcome harassment; (3) the harassment was based on his engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of [her] employment." Kelly v. Dun & Bradstreet, Inc., 641 F. App'x 922, 923 (11th Cir. 2016), cert. denied, 137 S. Ct. 2132 (2017). "[A] claim for a hostile work environment, like other types of harassment, still requires proof of harassing acts so severe or pervasive that they altered the terms and conditions of employment." Ekokotu v. Fed. Exp. Corp., 408 F. App'x 331, 339 (11th Cir. 2011) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The fourth element contains an objective and subjective component, meaning a reasonable person would find the environment hostile or abusive and the victim must subjectively perceive same. Gowski, 682 F.3d at 1312.

Coates testified in her deposition about the following forms of alleged harassment: intimidating gestures, the extent of which is that McIntosh brusquely grabbed paper off Coates' desk, McIntosh unnecessarily assisted Coates, McIntosh pointed out Coates' errors, and required Coates have an officer come assume her duties when she needed to use the restroom. (Doc. 29-1 at 20). Jackson argues Coates did not allege – much less suffer – actions so "severe or pervasive" as to alter her employment's terms and conditions. (Doc. 28 at 24).[14]

---

[14] It appears Coates alleges the hostile work environment occurred not on the basis of her race but as a result of retaliatory animus. These buzzwords "hostile work place" are located within Count III, which alleges retaliation. Jackson, while correct that "The Plaintiff is unable to show severe and pervasive comments based upon discriminatory intent that affected the terms of her employment[,]" (Doc. 28 at 26), is incorrect that Coates must she suffered "an abusive working environment based upon racial discrimination." However, conduct, whether motivated by Coates' race or EEOC charge, must still be severe or pervasive, and Jackson's argument is well taken.

First, Coates did not make clear these events occurred after she filed her May 2016 EEOC charge of discrimination. In order for these events to constitute retaliation, they would have to occur after she filed her EEOC complaint in May 2016. Second, even assuming, without deciding, these actions were motivated by retaliatory animus, these events fail to rise to the level to alter her work environment. See Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs, 616 F. App'x 899, 904 (11th Cir. 2015) (affirming summary judgment where "most of the incidents involved petty office squabbles and communication issues that are common in any workplace"). These slights Coates suffered at the hands of her employer or McIntosh, such as unrequested help, requiring Coates secure a temporary replacement while she took a break, identifying Coates' errors, do not constitute actions so severe or pervasive as to alter Coates' terms or conditions of employment.

Jackson's motion with respect to Count III (retaliation) is **GRANTED**.

**IV.     Conclusion**

Based upon the foregoing, it is **ORDERED** that the City of Jackson, Alabama's Motion for Summary (Doc. 27) is **GRANTED** as to all claims.

**DONE** the 22nd day of May 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**